Cynthia M. BANKS,
Defendant-Appellant,

v.

UNITED STATES of America,
Plaintiff-Appellee.

No. 79–5099.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 10, 1979.

Decided Jan. 30, 1980.

Larry L. Saunders, Louisville, Ky. (Court-appointed), for defendant-appellant.

Albert Jones, U. S. Atty., Hancy Jones, III, Louisville, Ky., for plaintiff-appellee.

Before KEITH and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.

DAMON J. KEITH, Circuit Judge.

The question presented by this case is whether a federal district judge may delegate the task of conducting a probation revocation hearing to a United States Magistrate. We hold that the judge may not.

FACTS

The facts are simple and undisputed. Cynthia M. Banks pleaded guilty in October of 1977 to possession of stolen mail matter. The district court sentenced her to 30 days in jail and two years probation. As a special condition of probation, the defendant was to make restitution in the amount of $235.00.

In December of 1978, the Chief Probation Officer for the U. S. District Court for the Western District of Kentucky petitioned the court to issue a probation violation warrant ordering Ms. Bank's appearance at a probation revocation hearing. In January of 1979, a preliminary hearing was held before a Magistrate. He found probable cause to believe that the defendant had violated the terms of her probation and directed that a final probation revocation hearing be held on February 1, 1979.

Over objection, the final hearing was held before the magistrate instead of the district judge. The defendant's probation officer testified that the defendant had not made restitution and had not filed required monthly reports for the months of October and November, 1978. In addition, he testified that the defendant had been arrested on an unrelated charge, but that she did not report this fact to him. The defendant then took the stand and testified that she had not made restitution because she was living on $135.00 per month welfare money and needed every penny to support herself and her child. The defendant also admitted that she had been derelict in reporting to her probation officer, but argued that she was afraid and had heard that she was on the probation officer's "bad list." In addition, the defendant claimed that her mother had been ill and that she (the defendant) had called the Probation Officer once, but that he was out. She pointed out that after her arrest she had complied with all requirements of probation reporting. The defendant also stated that she would make a good faith effort to repay the monies owed.

After hearing the arguments of counsel, the magistrate recommended that the de-

fendant's probation be revoked and that she appear before a district judge on February 22, 1979 for sentencing or reinstatement on probation. The district court found that the magistrate had properly and fairly conducted the revocation hearing. It adopted the magistrate's recommendation that probation be revoked and ordered the defendant to serve 23 months in prison.[1] The defendant has appealed.

## I.

Probation revocation proceedings in the federal system consist of three steps. First, there is a preliminary hearing to determine if there is probable cause that a defendant is a probation violator. Second, there is a full administrative hearing on whether the defendant violated the terms of her probation. Third, assuming a violation, there is a final resentencing which cannot be for more time than originally given. *See* 18 U.S.C. § 3653; *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). No one disputes that a magistrate can conduct the preliminary hearing.[2] And the government does not argue that a magistrate could re-sentence a defendant.[3] The question is whether a magistrate can conduct the actual revocation hearing and recommend a result to the district judge.

The judges of the United States District Court for the Western District of Kentucky, acting pursuant to their local Rule 14, have adopted a policy statement which allows magistrates to conduct probation revocation hearings. The statutory basis for this action is the 1976 amendments to the Federal Magistrates Act. 28 U.S.C. § 636(b)(3) (1976) *amending* 28 U.S.C. § 636 (1968), states that "a magistrate may be assigned such additional duties as are not inconsistent with the laws and Constitution of the United States." The question before us is whether this provision should be construed to allow Magistrates to hold final probation revocation hearings.

## A.

Congress amended 28 U.S.C. § 636 in 1976. Specific authority was granted magistrates in three distinct areas. First, purely procedural pre-trial motions can be referred to a magistrate for adjudication. A federal district judge can overturn the magistrate's actions, but only if they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Second, a magistrate may submit proposed findings of fact and recommendations on a variety of substantive motions. That is, motions for injunctive relief,[4] for judgment on the pleadings, for summary judgment, to quash an indictment or information, to suppress evidence in a criminal case, for class certification, and for an involuntary dismissal of the case. 28 U.S.C. § 636(b)(1)(B). Third, specific provision has been made for handling prisoner cases, both habeas corpus petitions and civil suits challenging conditions of confinement. 28 U.S.C. § 636(b)(1)(B). When dealing with substantive motions or prisoner's cases, a magistrate may conduct hearings, including evidentiary hearings. 28 U.S.C. § 636(b)(1)(B).[5] However, the magistrates' findings are subject to *de novo* review by the district judge. 28 U.S.C. § 636(b)(1)(C).

---

1. This was the maximum sentence which the district court could have given her. The reason is that the court originally sentenced her to two years in prison, but suspended all but 30 days. A defendant whose probation is revoked cannot be given a heavier sentence than the one originally imposed. 18 U.S.C. § 3653. The sentence has been stayed pending appeal.

2. See 28 U.S.C. § 636(a)(1); F.R.Crim.Pro. 5.

3. Magistrates do have limited authority to try persons accused of petty offenses. *See* 18 U.S.C. § 3401. Under 18 U.S.C. § 3401(d), a

magistrate, has authority "to grant probation and to revoke or reinstate the probation of any person granted probation *by him.*" This narrow exception, of course, is inapplicable here.

4. We assume that the statute is referring to *preliminary* injunctions under F.R.Civ.Pro. 65. Unless a case is decided on summary judgment, a permanent injunction must await a trial on the merits.

5. Of course, a magistrate is also permitted to hold a hearing on procedural motions which are referred to him. 28 U.S.C. § 636(b)(1)(A).

The plain language of the statute's express provisions demonstrates that Congress was careful to limit referrals to a magistrate. Only certain carefully defined matters can be referred. The standard of district court review varies with the matter referred. Probation revocation hearings are not within these express provisions.

### B.

In contrast, the separate section of the statute on which the government relies, 28 U.S.C. § 636(b)(3), gives a district court open-ended authority to assign "additional duties" to a magistrate. The government argues that a probation revocation hearing fits nicely within the "additional duties" contemplated by the statutory scheme. Our review of the statute and the legislative history persuades us otherwise.

The statute clearly contemplates that a magistrate be allowed to help a district judge with a variety of pre-trial motions. However, absent consent, the magistrate cannot conduct a trial itself. Under our system of law, when there are factual controversies, there must be a trial. Only when a party is entitled to judgment as a matter of law may a trial be aborted. *See* e. g. F.R.Civ.Pro. 12, 56. Congress was careful to recognize this distinction when it amended the Federal Magistrate's Act. The Act permits a magistrate to prepare proposed findings on a variety of "case dispositive" motions such as summary judgment. Except for prisoner's cases, the act does not permit the magistrate to perform fact-finding on the merits of a case. That is the exclusive function of a district judge. Indeed, the magistrate's role is to free the judge from pre-trial wrangling so that he can try cases.[6]

The legislative history of 28 U.S.C. § 636(b)(3)'s allowance of magistrates assuming "additional duties" is entirely consistent with this view. The legislative history speaks of "innovative experimentations" in the use of a magistrate, but does not suggest that probation revocation hearings were meant to be so included. On the contrary, the legislative history suggests that this provision was meant to apply only to procedural and administrative matters:

> Under this subsection, the district courts would remain free to experiment in the assignment of other duties to magistrates which may not necessarily be included in the broad category of "pretrial matters." This subsection would permit, for example, a magistrate to review default judgments, order the exoneration of forfeiture of bonds in criminal cases, and accept returns of jury verdicts where the trial judge is unavailable. This subsection would also enable the court to delegate some of the more administrative

---

**6.** The legislative history of the 1976 amendment illustrates well how the statutory scheme is supposed to operate:

> Rather than constituting "an abdication of the judicial function," it seems to the committee that the use of a magistrate under the provisions of S.1283, as amended, will further the congressional intent that the magistrate assist the district judge in a variety of pretrial and preliminary matters thereby facilitating the ultimate and final exercise of the adjudicatory function at the trial of the case.
>
> The Federal Rules of Civil Procedure provides many opportunities for the parties by motion to invoke a decision of the court. These opportunities range from a motion under Rule 6(b) to extend the time for an act, or a motion under Rule 4(e) specifying the manner of serving a summons, to a motion under Rule 12(b) to dismiss, or a motion under Rule

56 for summary judgment on the grounds that there is no genuine issue of [a] fact to justify a trial. In between these extremes are various motions relating to discovery, to production of evidence, to physical examination of a party, to join necessary or proper parties, to set the time and place of a disposition, to suppress evidence, and to hold a pretrial conference under Rule 16, and others too numerous to mention.

> Without the assistance furnished by magistrates in hearing matters of this kind, and others not specifically named, it seems clear to the committee that the judges of the district courts would have to devote a substantial portion of their available time to various procedural steps rather than to the trial itself.

H.R. No. 94–1609 11 (1969), *reprinted* in 1976 U.S.Code Cong. & Admin.News, pp. 6162, 6167.

functions to a magistrate, such as the appointment of attorneys in criminal cases and assistance in the preparation of plans to achieve prompt disposition of cases in the court.

If district judges are willing to experiment with the assignment to magistrates of other functions in aid of the business of the courts, there will be increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties, and a consequent benefit to both efficiency and the quality of justice in the Federal Courts.

H.R. No. 94–1609 12, *reprinted* in 1976 U.S. Code Cong. & Admin.News, pp. 6162, 6172.

In our view, a probation revocation hearing was not meant to be included as one of the duties which could be delegated to a magistrate.[7] The revocation hearing, while informal, necessarily requires fact-finding and credibility assessment. The issues adjudicated at the hearing are not procedural or administrative and do not turn on pure matters of law. With two exceptions, Congress has been careful to retain fact-finding functions in district judges. The two exceptions are evidentiary hearings in habeas corpus cases and hearings in prisoner suits challenging conditions of confinement.[8] 28 U.S.C. § 636(b)(1)(B). We will not lightly infer that Congress meant to include probation revocation hearings as well.

## II.

Important policy considerations support our view of the statute. Probation revocation in the federal system is a discretionary,

---

7. *In Wingo v. Wedding*, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974), *aff'ng* 483 F.2d 1131 (6th Cir. 1973), the Court ruled that there existed no statutory authority in the Magistrate's Act for a magistrate to conduct an evidentiary hearing in a habeas corpus case. In contrast, the Court in *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976) held that social security disability cases could be considered by a magistrate who could then submit recommended findings to a district judge. The legislative history of the 1976 amendment shows that congress expressly intended to overrule *Wingo v. Wedding, supra*. *See* H.R. No. 94–1609 11 *reprinted* in 1976 U.S.Code Cong. & Admin.News, p. 6171.

Even greater expansion of magistrate's authority has occurred in the Federal Magistrate Act of 1979, P.L. 96–82, approved October 10, 1979; *reprinted* in 48 U.S.L.W. 11 (Statutes November 6, 1979). This recent statutory change basically allows *consensual* civil and criminal misdemeanor trials before a magistrate. It also does not affect the result here. *See also*, Note *Article III Constraints and the Expanding Civil Jurisdiction of Federal Magistrates: A Dissenting View*, 88 Yale L.J. 1023 (1979).

8. The constitutionality of having a magistrate conduct an evidentiary hearing involving witness credibility issues is uncertain in light of *United States v. Raddatz*, 592 F.2d 976 (7th Cir.), *cert. granted,* —— U.S. ——, 100 S.Ct. 44, 62 L.Ed.2d 30 (1979) (district judge must hold de novo hearing on motion to suppress where witness credibility is in question). Compare *Muhich v. Allen*, 603 F.2d 1247 (7th Cir. 1979) (2–1 decision) (consensual civil jury trial presided over by a magistrate proper). *See also* *Hill v. Jenkins*, 603 F.2d 1256 (7th Cir. 1979) (nonconsensual referral of civil case to magistrate for trial was improper); *DeCosta v. Columbia Broadcasting System, Inc.*, 520 F.2d 499 (1st Cir. 1975). (Consensual referral of civil case to magistrate proper).

The case law is pretty uniform in requiring district judges to make de novo credibility determinations in habeas corpus cases. *United States v. Raddatz, supra; O'Shea v. United States*, 491 F.3d 774, 778 (1st Cir. 1974). *See also, United States v. Bergera*, 512 F.3d 391 (9th Cir. 1975) (district judge can accept magistrate's findings, but if judge rejects them, he must hold de novo hearing if credibility questions are present). Cf. *McKinney v. Parsons*, 488 F.2d 452 (5th Cir. 1974) (district court must make its own determination as to whether materials are obscene and cannot defer to magistrate's judgment in a habeas corpus case).

The underlying due process rationale for this view was stated by the Supreme Court in *Wingo v. Wedding, supra*, 418 U.S. at 474, 94 S.Ct. at 2850:

"[O]ne of the essential elements of the determination of the crucial facts is the weighing and appraising of the testimony. To experienced lawyers, it is commonplace that the outcome of a lawsuit—and hence the vindication of legal rights—depends more often on how the factfinder appraises the facts than on a disputed construction of a statute or interpretation of a line of precedents. Thus the procedures by which the facts of the case are determined assume an importance fully as great as the validity of the substantive rule of law to be applied." (Citations omitted).

open-ended process. *See* 18 U.S.C. § 3653. A district court has broad discretion whether to revoke probation and, if so, what length sentence to impose. *See e. g. United States v. Shapiro*, 491 F.2d 335 (6th Cir. 1974); *United States v. Tucker*, 444 F.2d 512 (6th Cir. 1971). In a very real sense, probation revocation is a resentencing. *See Nicholas v. United States*, 527 F.2d 1160, 1162 (9th Cir. 1974).[9] Sentencing is probably the most difficult task faced by a federal district judge. It is a difficult, highly subjective duty in which myriad factors play a part. Ultimately, a sentence is based on the district judge's evaluation of a defendant. A re-sentencing pursuant to revocation of probation involves more than an evaluation of the defendant's overall record. The judge has already sentenced the defendant, but the defendant has, to some extent, violated the trust placed in him by violating the terms of his probation.

It is important for the judge to be familiar with the circumstances surrounding the defendant's intervening conduct. If the violation is severe, stern action may be in order. If not, simple reinstatement of probation or a light sentence may be best.[10]

By referring the probation revocation hearing to a magistrate, a district judge deprives himself of a vital opportunity to assess the defendant prior to re-sentencing. The district court is not present to assess credibility and hear the defendant explain why he may have failed to comply with the terms of probation. A cold hearing record is no substitute for personal observation.[11] It is true that a defendant and/or his counsel may address the Court at re-sentencing on a probation revocation. However, we are convinced that as a policy matter, it is wise to maximize opportunities for a judge to evaluate a defendant.[12]

**9.** It is true, as the government argues, that a probation revocation hearing is not of the same magnitude as a full blown criminal trial. Probation is a matter of grace and a district court can revoke probation if it is convinced that a defendant's conduct has not met stated standards. *See United States v. Burklatter*, 588 F.2d 604 (8th Cir. 1978); *United States v. Langley*, 438 F.2d 91, 92 (5th Cir. 1970); *United States v. Nagelberg*, 413 F.2d 708 (2d Cir.), *cert. denied*, 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1969). Revocation hearings are informal and flexible. A defendant has a right to the minimal due process protections of a fair hearing, but in no sense does this approximate a full criminal trial. *See Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *United States v. Farmer*, 512 F.2d 160 (6th Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305 (1975). Absent police harassment, the exclusionary rule will not apply at a probation revocation hearing. *United States v. Farmer, supra*, 512 F.2d at 162–63. *See also Steinberg v. Police Court of Albany, New York*, 610 F.2d 449 (6th Cir. 1979).

To many defendants, however, revocation of probation is of greater significance than the initial trial and sentencing. This was true in defendant Cynthia Bank's case. She only received a 30 day sentence after her plea of guilty, but ended up with a 23 month sentence after revocation of her probation.

**10.** It is clear that a judge has broad authority whether to revoke probation and, if so, what sentence to impose. Some courts, however, have suggested that a judge cannot revoke probation and then reinstate it. *Fox v. United States*, 354 F.2d 752, 754 (10th Cir. 1965); *United States v. Buchanan*, 340 F.Supp. 1285, 1288–89 (E.D.N.C.1972). We do not agree. We find persuasive the views of the Eighth, Ninth and Fifth Circuits which have held that it is permissible to reinstate a defendant on probation after probation was formally revoked. *United States v. Rodgers*, 588 F.2d 651 (8th Cir. 1978); *Nicholas v. United States*, 527 F.2d 1160 (9th Cir. 1976); *Smith v. United States*, 505 F.2d 893 (5th Cir. 1974).

**11.** In this case, as in *Wingo v. Wedding, supra*, the district court had the opportunity to listen to a sound recording of the hearing before the magistrate. This is still no substitute for an actual hearing where the judge could observe the witnesses and interpose clarifying questions if necessary. We also endorse Judge Weick's observation in *Wedding v. Wingo*, 483 F.2d 1131, 1136 n.2 (6th Cir. 1973), *aff'd*, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974):
It would appear to us that it would take about the same amount of time for the District Judge to listen to the recording as it would require for him to preside at the evidentiary hearing.

**12.** The vital consideration is that the same person who is doing the sentencing conduct the

The facts of this case illustrate the importance of having the district court conduct the actual revocation hearing. Cynthia Banks was undoubtedly guilty of violating the terms of her probation. She conceded before the magistrate that she did not make efforts to pay back stolen monies, that she had failed to report to her probation officer on two occasions, and that she had failed to report an arrest. However, her offenses were hardly heinous. She and her child were living on $135.00 a month.[13] The arrest was for a traffic offense. Admittedly, her failure to report appears unjustifiable. However, it is quite understandable how a poor person may have an irrational fear of authority. This appears to be a case where mercy should be carefully considered.[14]

Cynthia Banks may be an unrepentant con artist or a scared welfare mother caught up in a system she does not understand. It is likely that she is something in between these extremes. On this cold appellate record, we cannot make an informed judgment about the defendant. The district court apparently concluded that stern measures were needed because it re-sentenced her to the maximum permissible sentence—23 months in prison. We do not suggest that the district court was incorrect in its assessment. We do suggest that the district court would have been in a much better position to judge had it presided over the full revocation hearing. Cf. *United States v. Diaz-Burgos,* 601 F.2d 983 (9th Cir. 1979) (court revoked probation and re-im-

---

hearing. *See Morgan v. United States,* 298 U.S. 468, 480–81, 56 S.Ct. 906, 80 L.Ed. 1288 (1936). In *Morrissey v. Brewer, supra,* 408 U.S. at 487–88, 92 S.Ct. 2593, the Court assumed that the same body which determined whether a parolee violated his parole would also determine whether the violation warranted revocation of parole. *See Gagnon v. Scarpelli, supra,* 411 U.S. at 784, 93 S.Ct. 1756 (endorsing *Morrissey* for probation revocation purposes and noting the difficult factual judgment which must be made in determining whether a probation or parole violation warrants revocation).

In both *Morrissey* and *Gagnon* there were only two factual judgments to be made 1) whether a probationer or parolee violated the terms of his parole; 2) whether parole or probation should be revoked. In a federal probation revocation setting, the judge has the additional authority to re-sentence the violator to serve less prison time than originally given. The need for a fully informed judgment is obvious. *See United States v. Segal,* 549 F.2d 1293, 1298 (9th Cir.), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977).

We are aware that a number of courts have upheld sentencing by a different judge than the one who tried the case in the first place. *See* F.R.Crim.Pro. 25; *United States v. McCallie,* 554 F.2d 770, 773–74 (6th Cir. 1977) and cases cited; *United States v. Bowser,* 497 F.2d 1017, 1019 (4th Cir.), *cert. denied* 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91 (1974); *United States v. Bakewell,* 430 F.2d 721, 722 (5th Cir.), *cert. denied,* 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 384 (1970). However, these courts have noted that it is "the better practice" for the judge who presided at trial to sentence the defendant. *United States v. Bowser, supra,* at 1019 n.2a; *United States v. Bakewell, supra,* at 722.

**13.** The government faulted her for not trying to make arrangements to slowly pay back the $235.00 she was ordered to pay. The government does not explain what arrangements a welfare mother with one child could make to repay a debt on a total income of $135.00 a month. The attitude and beliefs of the United States Attorney's Office for the Western District of Kentucky notwithstanding, there are no debtor's prisons in this country.

**14.** The facts of this case are somewhat similar to those in *United States v. Reed,* 573 F.2d 1020 (8th Cir. 1978) where a probationer failed to maintain employment, notify his probation officer of an address change, and did not report as directed. The district court revoked probation and sentenced him to three years. The Eighth Circuit held that the district court erred in relying on defendant's failure to make restitution and remanded for a new hearing. In so doing, the court made the following observation, which we endorse:

The decision to revoke probation should not merely be a reflexive action to an accumulation of technical violations of the conditions imposed upon the offender. That approach would be inconsistent with, and detrimental to the goals of the probation program. . . . Rather, probation should be revoked only in those instances in which the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity. Id. at 1024 (citation omitted). Accord *United States v. Tyler,* 605 F.2d 851 (5th Cir. 1979).

posed maximum sentence. Error for the court not to allow defendant to explain mitigating circumstances).

### III.

Although we do not base our decision on constitutional grounds, there are due process considerations present.[15] We note with interest that the Seventh Circuit has recently held that a district court must conduct a full hearing where there are contested questions of fact in a criminal case which depend on a credibility assessment. *United States v. Raddatz*, 592 F.2d 976 (7th Cir.), *cert. granted* —— U.S. ——, 100 S.Ct. 44, 62 L.Ed.2d 30 (1979). In *Raddatz*, a magistrate recommended findings on a hotly disputed motion to suppress. The court held that where testimonial clash existed, the district court had to hold a new hearing and could not endorse the magistrate's views based on reading a cold record. The court's ruling was based on the due process clause since there existed express statutory authority for the magistrate's actions. We have no such problem in this case. We are content to rule that the district court's delegation to the magistrate had no statutory basis.

Reversed and remanded for further proceedings consistent with this opinion.

---

**15.** The general due process rule in criminal cases is that the judge who holds the hearing must make the final decision. If a judge dies before rendering a decision, his successor must hold a new hearing. *See United States v. Raddatz*, 592 F.2d 976, 984 (7th Cir. 1979).

On the other hand, this rule may not apply in some civil or administrative contexts. *See NLRB v. Mackay Radio & Tel. Co.*, 304 U.S. 333, 350–51, 58 S.Ct. 904, 82 L.Ed. 1381 (1938); *Utica Mutual Ins. Co. v. Vincent*, 375 F.2d 129, 131–32 (2d Cir.), *cert. denied*, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 109 (1967); *Gamble-Skogmo, Inc. v. FTC*, 211 F.2d 106, 113–14 (8th Cir. 1954); *Van Teslaar v. Bender*, 365 F.Supp.

1007, 1011 (D.Md.1973). Further, if a judge dies or is otherwise incapacitated after a criminal trial, but before sentencing, another judge may sentence the defendant. There is no need to re-try the case, at last under most circumstances. *See* F.R.Crim.Pro. 25 and cases cited n.12, *supra*.

We are also aware that there is no Constitutional requirement that a probation revocation hearing be held before an article III judge, only that the fact-finder be impartial. *Gagnon v. Scarpelli, supra*, 411 U.S. at 785–86, 93 S.Ct. 1756; *Morrissey v. Brewer, supra*, 408 U.S. at 487–88, 92 S.Ct. 2593.